FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

2014 JUL -8 AM 9:08

| | |
|---|---|
| DONALD N. TIMM and MARY K. TIMM, husband and wife, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GOODYEAR TIRE and RUBBER COMPANY, )<br>an Ohio-based Corporation and GOODYEAR )<br>DUNLOP TIRES NORTH AMERICA, LTD., an )<br>Ohio-based Corporation and HARLEY-DAVIDSON,)<br>INC., a Wisconsin-based Corporation and TEGOL, )<br>INC., a California-based Corporation, and NANAL, )<br>INC., a Nevada-based Corporation, )<br>)<br>Defendants. ) | Case No. 2:14CV 232<br><br>Hon.<br>Judge Presiding<br><br>Hon.<br>Magistrate Judge<br><br>JURY DEMANDED |

## COMPLAINT

Now come the plaintiffs, DONALD N. TIMM and MARY K. TIMM, husband and wife, by and through their attorneys, John P. DeRose & Associates and complain of Defendants, GOODYEAR TIRE and RUBBER COMPANY, and GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., and HARLEY-DAVIDSON, INC., and TEGOL, INC., and NANAL, INC., as follows:

### INTRODUCTION

1. This complaint sounds in strict liability, negligence, and the common law of the State of Indiana.

### JURISDICTION AND VENUE

2. This Court has jurisdiction of the action pursuant to pursuant to 28 U.S.C.A. §§ 1332 and 1367.

3. Venue is proper under U.S.C.A. Const.Amend. 14, Fed.R.Civ.P. 4(k)(1)(A), (D), and Indiana Trial Procedure Rule 4.4(A). Plaintiffs reside in Dyer, Indiana in this judicial district

1



while Goodyear Tire and Rubber Company and Goodyear Dunlop Tires North America, Ltd. are Ohio-based Corporations doing business respectively throughout the world and North America and Tegol, Inc. and Nanal, Inc. are respectively California and Nevada based Corporations doing business over the Internet throughout the world, and specifically in Indiana as "LeatherUp.com", and the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

4. Plaintiffs, Donald N. Timm and Mary K. Timm, husband and wife, (hereinafter sometimes referred to as "Plaintiffs") are, and were at all relevant times, residents of the State of Indiana.

5. GOODYEAR TIRE and RUBBER COMPANY (hereinafter sometimes referred to as "Defendant Goodyear") is an Ohio-based Corporation doing business throughout the world and specifically in the State of Indiana under the web address of "www.goodyear.com", having its World headquarters, its North American Tire headquarters, its Goodyear Dunlop Tires North America headquarters, and its innovation center, racing tires, chemicals, tire proving grounds, and airship operations in Akron, Ohio.

6. GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD. (hereinafter sometimes referred to as "Defendant Dunlop Tires") is an Ohio-based Corporation doing business throughout North America and specifically in the State of Indiana under the web address of "www.dunlopmotorcycle.com".

7. HARLEY-DAVIDSON, INCORPORATED (hereinafter sometimes referred to as "Defendant Harley-Davidson, Inc." or as "Harley-Davidson") is a Wisconsin-based Corporation

doing business over the Internet throughout the world, and specifically in the State of Indiana under the web address of "www.harley-davidson.com".

8.  TEGOL, INCORPORATED (hereinafter sometimes referred to as "Defendant Tegol, Inc." or as "Tegol, Inc.") is a California-based Corporation doing business over the Internet throughout the world, and specifically in the State of Indiana under the web addresses of "www.LeatherUp.com", "www.LeatherUp.net", "www.LeatherUp.org", and "www.LeatherUp".

9.  NANAL, INCORPORATED (hereinafter sometimes referred to as "Defendant Nanal, Inc.") is a Nevada-based Corporation doing business over the Internet throughout the world, under the web addresses of "www.LeatherUp.com", "www.LeatherUp.net", "www.LeatherUp.org", "www.LeatherUp", and "www.motorcyclecenter.com".

## STATEMENT OF FACTS

10.  For over thirty years, Donald N. Trimm and his wife, Mary K. Trimm have been experienced and enthusiastic motorcyclists, he as the operator and she as the passenger as they rode and made many cross-country tours on their motorcycle.

11.  On February 8, 2008 Plaintiffs purchased a barely used 2006 FLHTCU Harley Davidson Ultra Classic touring motorcycle with 985 miles on it from a Harley-Davidson motorcycle dealership in Thiensville, Wisconsin.

12.  On June 28, 2011, while surfing the Internet from their home in Dyer, Indiana, Plaintiffs observed a webpage maintained by Defendant Tegol, Inc., entitled "LeatherUp.com", and boasting to be "The Most Popular Online Motorcycle Store"

13.  On their website, Defendants Tegol, Inc. and Nanal, Inc. offered for sale all the items a motorcyclist would ever need, including, but not limited to, motorcycle jackets and vests,

3

motorcycle foot wear and boots, motorcycle pants and chaps, motorcycle helmets, motorcycle parts, and motorcycle accessories.

14. Included among the items Defendants Tegol, Inc. and Nanal, Inc. offered for sale "throughout the world" over the Internet were "Ultra-Low-Profile Outlaw Carbon Fiber Motorcycle Half Helmets".

15. On June 28, 2011, Plaintiff Mary Timm ordered over the Internet from Defendants Tegol, Inc. and Nanal, Inc. two (2) "Ultra-Low-Profile Outlaw Glossy Rosewood Red Carbon Fiber Motorcycle Half Helmets", one for her husband and the other for herself.

16. Payment for the purchase was made by a credit card over the Internet and the motorcycle helmets were shipped by Defendant Tegol, Inc. from California via "2 Day Air" to Plaintiffs at their home in Dyer, Indiana.

17. Unbeknownst to Plaintiffs, in 2012 Defendants Tegol, Inc. and Nanal, Inc. were notified by the National Highway Traffic Safety Administration of the United States Department of Transportation that OUTLAW/AX-3 SERIES/9999, OUTLAW/AX-4 SERIES/9999, and OUTLAW/TG-5 SERIES/9999 motorcycle helmets failed to comply with all applicable Federal Motor Vehicle Safety Standards.

18. After having been so advised, in 2012 Defendant Tegol, Inc. initiated a safety recall campaign, NHTSA Recall No. 12E–051, which included only certain shipments of AX-3 Series helmets.

19. Defendants Tegol, Inc. and Nanal, Inc. failed to notify Plaintiffs Donald N. Timm and Mary K. Timm that the motorcycle helmets they had purchased had been recalled by the National Highway Traffic Safety Administration for failure to comply with all applicable Federal Motor Vehicle Safety Standards and that as a consequence, "in wearing a noncompliant helmet,

4

the user may not be adequately protected in the event of a crash, increasing the risk of personal injury".

20. After Plaintiffs' 2012 motorcycle trip to Glacier National Park in Montana, they were going to need another rear tire for the next riding season.

21. On its website "harley-davidson.com", Defendant Harley-Davidson offers for sale Dunlop Motorcycle Tires and proudly proclaimed that "[s]ince 1984 DUNLOP Tires have been Original Equipment on Harley-Davidson Motorcycles. DUNLOP is recognized as one of the world-leaders in motorcycle tire design, engineering and manufacturing excellence. "

22. On their website "dunlopmotorcycle.com/tire-catalog/", Defendants Goodyear and Dunlop Tires offer for sale "High-Performance Dunlop Motorcycle Tires", and proudly advertise that "the D402 is the approved Harley-Davidson touring tire."

23. The Dunlop D402 tire was manufactured and offered for sale by Defendants Goodyear and Dunlop Tires as original equipment or replacement tires on touring and cruiser motorcycles.

24. In November 2012 Plaintiffs purchased a brand-new Dunlop D402, Series Rear, MU85B16, M/C 77H tire manufactured by Defendants Goodyear and Dunlop Tires and kept the rear tire in the house until the spring of 2013.

25. In May 2013 Plaintiffs installed the brand-new Dunlop D402 rear tire on their 2006 Harley-Davidson Ultra Classic touring motorcycle.

26. Prominently stamped and tooled into the rubber on the sidewall of the tire are the words " Dunlop D402" and "Harley-Davidson".

27. In July 2013 Plaintiffs Donald N. Timm and Mary K. Timm planned and were making a cross country tour on their Harley-Davidson Ultra Classic touring motorcycle through the State of Nebraska to their ultimate destination of Salt Lake City, Utah.

28. Before and at all relevant times complained of hereinafter, Plaintiff Donald N. Timm was operating their motorcycle legally and safely and was exercising care for his own safety, the safety of his wife, Mary, and the safety of others.

29. On July 10, 2013 while Plaintiff Donald N. Timm drove and his wife, Mary road as passenger on the Harley Davidson motorcycle, the rear tire of the vehicle suddenly and without warning lost pressure, deflated, and went flat causing the motorcycle to skid out of control along the roadway and crash into a concrete abutment, resulting in serious injury to both Plaintiffs.

30. The sudden deflation/ loss of pressure to the motorcycle tires, leading to accidents and serious injury to motorcyclists was well known to Defendants Goodyear and Dunlop Tires who manufactured, sold, and distributed the Dunlop D402 tires.

31. Plaintiffs suffered pain and serious injury as a result of the accident.

32. Following the accident Plaintiff Donald N. Timm was airlifted by helicopter to the trauma center at Creighton University Medical Center while his wife, Mary was taken there by ambulance.

33. Plaintiffs remained hospitalized at Creighton University Medical Center in the State of Nebraska for a period in excess of one week with serious head and body injuries each had sustained in the motorcycle accident.

34. Plaintiff Donald N. Timm was later transferred to the Rehabilitation Institute of Chicago because of the brain injuries he had sustained in the motorcycle accident.

35. Because the motorcycle helmet she was wearing at the time of the accident was cracked as a result of the crash, Plaintiff Mary K. Timm threw the helmet away.

36. Badly scraped and blood covered, but not cracked during the crash, the motorcycle helmet worn by Plaintiff Donald N. Timm at the time of the accident was not discarded and still remains in his possession.

37. Following the accident, the Harley-Davidson Ultra Classic touring motorcycle with the defective Dunlop D402 rear tire was hauled on a flatbed and remains stored in Plaintiffs' garage.

### Count I - Negligence
### Against Defendants Goodyear and Dunlop Tires
### And Defendant Harley-Davidson

38. Plaintiff repeats and realleges Paragraphs 1 to 37 of this Complaint as Paragraphs 1 to 37 of this Count I as if restated fully herein.

39. The 2013 Dunlop D402 tire had less than 1,000 miles use or wear on it just prior to Plaintiffs' cross-country trip through Nebraska.

40. Defendants Goodyear and Dunlop Tires who manufactured, sold, and distributed the Dunlop D 402 tires had been repeatedly advised and warned by motorcyclists and national publications that the motorcycle tires they manufactured, sold, and distributed were experiencing sudden deflation and loss of pressure, leading to accidents and serious injury to motorcyclists.

41. Defendant Harley-Davidson who advertised, sold, and distributed the Dunlop D402 tires had been repeatedly advised and warned by motorcyclists and national publications that the motorcycle tires they advertised, sold, and distributed were experiencing sudden deflation and loss of pressure, leading to accidents and serious injury to motorcyclists.

42. On information and belief, Defendants Goodyear and Dunlop Tires and Defendant Harley-Davidson were often warned and sued in many cases across the country by motorcyclists using this type of tire and experiencing sudden deflation and loss of pressure, leading to accidents and serious injury, including, but not limited to, the following:

    a. In 2007, a federal jury in the United States District Court, Central District of Illinois awarded a verdict against Goodyear Dunlop Tires North America, Ltd. to a South Carolina woman who suffered brain damage and paralysis in 2002 after the rear tire of the motorcycle on which she was riding as a passenger suddenly deflated, causing the driver of the motorcycle to lose control.

    b. On November 10, 2008 suit was filed in the Second Judicial District Court in Butte, Montana on behalf of the estate of a motorcyclist who lost control and crashed when the rear Goodyear Dunlop D402 tire had "sudden and catastrophic leakage" because of a defect in the bead seat area of the tire.

    c. In 2009 suit was filed in the United States District Court, Middle District of Georgia, Athens Division by the estate of a female passenger who was killed when the rear Goodyear Dunlop D402 motorcycle tire suddenly deflated, causing the motorcycle to go out of control.

    d. In June 2009, a Washington state man was riding his 2004 Yamaha Royal Star Venture touring motorcycle equipped with Dunlop D404 tires when suddenly the rear tire with less than 3000 miles on it was "deflating rapidly" as he traveled on the interstate. The motorcyclist was able to slow from 70 mph to approximately 55 mph when he was thrown to the pavement. He was airlifted to Enloe Medical Center in Chico, California, because he had suffered a fractured scapula, five broken ribs, a collapsed lung, a lacerated spleen, and bruised kidneys.

    e. On July 4, 2009 a British Columbia couple was making a cross country trip to Vancouver Island when the Dunlop D402 rear tire on their 2003 Ultra Glide motorcycle suddenly blew out. The husband who was driving the motorcycle sustained fractured ribs, bruised hips and lungs, and severe road rash. His wife also sustained injuries.

    f. In July 2009 a Toledo, Ohio motorcyclist experienced a sudden blowout of a Dunlop D402 rear tire on his 2002 Harley-Davidson Ultra Classic touring bike. He lost control and his bike went down. The motorcyclist suffered a punctured lung, severely broken scapula, fractured clavicle, broken ribs, and a punctured and collapsed left lung.

g.  On June 13, 2010 an Amarillo, Texas couple who had purchased brand-new Dunlop D402 tires for their 1999 Harley-Davidson Road King motorcycle just five days earlier, were traveling on the interstate at about 70 mph when they both heard a whining noise coming from the tires. They slowed down and the motorcycle started to fishtail violently. The bike finally fell over and slid along the roadway for about 30 yards. Luckily, the wife received only some road rash on her right thigh and right elbow and a sore right wrist while the husband sustained only a sore calf.

h.  On June 8, 2010 an Ohio motorcyclist was riding with a passenger on the back of his Harley-Davidson Ultra Classic motorcycle when the Dunlop D402 rear tire suddenly deflated while traveling at about 30 mph. When the motorcyclist was able to bring the bike to about 10 mph, he and his passenger were thrown off the bike. They each suffered only minor injuries.

i.  On August 17, 2010 an El Paso, Texas couple was traveling to the Sturgis Motorcycle Rally in South Dakota when the Dunlop D402 rear tire on their 2003 Harley-Davidson Road King motorcycle suddenly "fell apart". The Dunlop D402 tire was two months old and had been installed by a dealer as part of a complete checkup preparatory to traveling to the Sturgis Motorcycle Rally. Neither motorcyclist was seriously injured, but the wife was so traumatized that she will no longer ride.

j.  A Lake Charles, Louisiana couple was seriously injured on June 9, 2011 when the Dunlop rear tire on their 2005 Harley-Davidson Ultra Classic motorcycle came apart while traveling 55 mph. The Dunlop tire had 6000 miles on it. Both motorcyclists were thrown from the bike and the wife was airlifted to a hospital. Both suffered shoulder and rib fractures and spent time in the intensive care unit.

k.  A California couple was seriously injured on August 27, 2011 when the Dunlop rear tire on their 1995 Harley-Davidson motorcycle rapidly deflated. The tire had about 4000 miles on it when it deflated. The motorcyclist reported that he was traveling about 55 mph at the time. He was able to reduce speed to about 30 mph before he lost control "when the tire came completely off the rim". He and his wife were airlifted to a hospital where they were admitted for six days. Each suffered bone fractures that required months of recovery.

l.  A Fredericksburg, Virginia couple were seriously injured on March 9, 2012 when the rear tire of their 2007 Harley-Davidson Ultra Classic motorcycle suddenly deflated. The wife who was riding as a passenger on the motorcycle was ejected and she suffered head injuries. The husband suffered broken bones in his neck and back. He said that the D402 tire that failed only had about 1,200 miles on it and that his motorcycle had been inspected by the Virginia DMV just weeks before the crash. A Trooper at the accident scene said he found no evidence that the motorcycle had struck anything.

43. Defendants Goodyear and Dunlop Tires and Harley-Davidson owed a duty to Plaintiffs to manufacture, advertise, distribute, and/or sell only motorcycle tires that are roadworthy, safe, and do not suddenly deflate.

44. Defendants Goodyear and Dunlop Tires and Harley-Davidson breached that duty by manufacturing, advertising, distributing, and/or selling Dunlop D 402 tires that allow excessive leakage of air leading to sudden and catastrophic deflation.

45. Defendants Goodyear and Dunlop Tires had a duty to use every reasonable precaution to prevent injury to Plaintiffs, and failed in that duty in one or more of the following ways:

> (a) negligently designed the Dunlop D 402 tires and rejected or failed to consider safer alternatives;
>
> (b) negligently marketed, distributed, and sold the Dunlop D 402 tires, resulting in the aforementioned personal injuries to Plaintiffs during routine use;
>
> (c) knew or should have known that the use of the Dunlop D 402 tires would result in the sudden loss of air and deflation of the motorcycle tires, and knew or should have known that injury would occur, yet continued to manufacture, sell, promote, market, and distribute the motorcycle tires;
>
> (d) failed to recall and/or negligently continued to manufacture, sell, promote, market, and distribute the Dunlop D 402 tires despite having actual and implied knowledge that users could not safely control the products; and
>
> (e) failed to warn Plaintiffs and other users of the hazards of the Dunlop D 402 motorcycle tires.

46. Defendants Goodyear and Dunlop Tires, through their negligence, were a direct, proximate and legal cause of the aforementioned injuries and property damage that Plaintiffs suffered.

47. Defendant Harley-Davidson had a duty to use every reasonable precaution to prevent injury to Plaintiffs, and failed in that duty in one or more of the following ways:

(a) negligently advertised, marketed, distributed, and sold the Dunlop D 402 tires and rejected or failed to consider safer alternatives, resulting in the aforementioned personal injuries to Plaintiffs during routine use;

(b) knew or should have known that the use of the Dunlop D 402 tires would result in the sudden loss of air and deflation of the motorcycle tires, and knew or should have known that injury would occur, yet continued to advertise, sell, promote, market, and distribute the motorcycle tires;

(c) failed to recall and/or negligently continued to advertise, sell, promote, market, and distribute the Dunlop D 402 tires despite having actual and implied knowledge that users could not safely control the products; and

(d) failed to warn Plaintiffs and other users of the hazards of the Dunlop D 402 motorcycle tires.

48.     Defendant Harley-Davidson, through its negligence, was a direct, proximate and legal cause of the aforementioned injuries and property damage that Plaintiffs suffered.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Goodyear and Dunlop Tires and Harley-Davidson as follows:

a.     Compensatory and consequential damages in excess of $10,000,000;

b.     Punitive damages in excess one of $10,000,000;

c.     The costs of this suit; and

d.     Such other relief which the Court finds just and proper in the circumstances.

### Count II - Strict Products Liability
### Against Defendants Goodyear and Dunlop Tires and Harley-Davidson
### Based on the Delivery of Defective and Unreasonably Dangerous
### Dunlop Motorcycle Tires

49.     Plaintiffs repeat and re-allege Paragraphs 1 to 48 of this Complaint as Paragraphs 1 to 48 of this Count II as if restated fully herein.

50.     At the time the Dunlop D402 tires left the possession of Defendants Goodyear and Dunlop Tires and on a continuing basis thereafter, Defendants Goodyear and Dunlop Tires

and Harley-Davidson had a duty to deliver motorcycle tires that were reasonably safe, yet breached this duty by delivering Dunlop D 402 tires that were unreasonably dangerous.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Goodyear and Dunlop Tires and Harley-Davidson as follows:

    a.    Compensatory and consequential damages in excess of $10,000,000;

    b.    Punitive damages in excess one of $10,000.000;

    c.    The costs of this suit; and

    d.    Such other relief which the Court finds just and proper in the circumstances.

### Count III- Strict Products Liability
### Against Defendants Goodyear and Dunlop Tires
### Based on Duty to Cease Manufacture and Distribution of the Defective Dunlop Tires

51. Plaintiffs repeat and re-allege Paragraphs 1 to 50 of this Complaint as Paragraphs 1 to 50 of this Count III as if restated fully herein.

52. With full knowledge of the catastrophic consequences of the repeated failures and of their motorcycle tires as aforesaid, Defendants Goodyear and Dunlop Tires had a duty to cease the manufacturer, distribution, and sale of the tires and to recall the distribution and sale of the seriously deficient tires already distributed and sold.

53. With full knowledge of the catastrophic consequences of the repeated failures and of the Dunlop D402 motorcycle tires as aforesaid, Defendant Harley-Davidson had a duty to cease the advertisement, distribution, and sale of the tires and to recall the distribution and sale of the seriously deficient tires already distributed and sold.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Goodyear and Dunlop Tires and Harley-Davidson as follows:

    a.    Compensatory and consequential damages in excess of $10,000,000;

    b.      Punitive damages in excess one of $10,000,000;

    c.      The costs of this suit; and

    d.      Such other relief which the Court finds just and proper in the circumstances.

### Count IV-Strict Products Liability
### Against Defendants Goodyear and Dunlop Tires and Harley-Davidson
### Based on Failure to Warn of the Defective Dunlop Tires

54.    Plaintiffs repeat and re-allege Paragraphs 1 to 53 of this Complaint as Paragraphs 1 to 53 of this Count IV as if restated fully herein.

55.    Plaintiffs' injuries resulted from the unreasonably dangerous condition of the Dunlop D402 tires.

56.    The unreasonably dangerous condition existed at the time the Dunlop D402 tires were manufactured and left the control of Defendants Goodyear and Dunlop Tires.

57.    Defendants Goodyear and Dunlop Tires and Harley-Davidson knew or should have known of the danger.

58.    Defendants Goodyear and Dunlop Tires and Harley-Davidson failed to adequately warn plaintiffs and other consumers of the dangers of the Dunlop D 402 tires.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Goodyear and Dunlop Tires and Harley-Davidson as follows:

    a.      Compensatory and consequential damages in excess of $10,000,000;

    b.      Punitive damages in excess one of $10,000,000;

    c.      The costs of this suit; and

    d.      Such other relief which the Court finds just and proper in the circumstances.

**Count V - Negligence**
**Against Defendants Tegol, Inc. and Nanal, Inc.**
**Based on a Design Defect, a Manufacturing Defect, and Distribution**
**Of the Ultra-Low-Profile Outlaw Motorcycle Half Helmets**

59. Plaintiffs repeat and re-allege Paragraphs 1 to 37 of this Complaint as Paragraphs 1 to 37 of this Count V as if restated fully herein.

60. While recuperating from his brain injuries, Plaintiff Donald N. Timm received an envelope bearing a postmark of 25 September 2013 from Defendant Tegol Inc., 955 Venice Blvd., Los Angeles, CA 90015, regarding "SAFETY RECALL NOTICE – 13 E-047".

61. Inside the envelope was a notice addressed to Plaintiff at his home address in Dyer, Indiana, which indicated in pertinent part:

> SAFETY RECALL NOTICE
> NHTSA Recall Number 13E-047
>
> Dear valued purchaser[:]
>
> This notice is being sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Tegol, Inc., has decided that the following models of helmet[:]
> OUTLAW/AX-3 SERIES/9999
> OUTLAW/AX-4 SERIES/9999
> OUTLAW/TG-5 SERIES/9999
> Failed to confirm [sic] to the requirements of Federal Motor Vehicle Safety Standard No. 218, "Motor Cycle Helmets."
>
> Your Outlaw Helmet Is Being Recalled Because[:]
> During the test conducted by the Department of Transportation this product failed at least one of the following US DOT standards[:]
> Impact attenuation
> Impact penetration
> Interior labeling
> Impact retention
>
> By wearing a noncompliant helmet, the user may not be adequately protected in the event of a crash, increasing the risk of personal injury.

62. That Safety Recall Notice, Recall Number 13E-047 was not forwarded by Defendants until seventy-five (75) days after Plaintiffs endured the serious motorcycle accident while wearing the defective and much earlier recalled "Ultra-Low-Profile Outlaw Glossy Rosewood Red Carbon Fiber Motorcycle Half Helmets".

63. On September 6, 2013, Jennifer Timian, Chief of the Recall Management Division of the Office of Defect Investigations/Enforcement of the National Highway Traffic Safety Administration, wrote Tegol, Inc. a letter which stated in pertinent part:

> Under 49 U.S.C. §30112(a), it is illegal for anyone, including a manufacturer, distributor, dealer, or retailer to sell an item of motor vehicle equipment or a motor vehicle that fails to comply with all applicable Federal motor vehicle safety standards.
>
> In 2012, Tegol initiated a safety recall campaign, NHTSA Recall No. 12 E-051. This recall included only certain shipments of AX–3 Series helmets. Tegol must explain why the AX–4 Series and the TG–5 Series helmets were not included in Tegol's safety recall campaign (NHTSA Recall No. 12E-051). Specifically, Tegol must explain what, if anything, is different about these helmets, such that Tegol did not decide on, or before, October 18, 2012 that these helmets are not compliant with Federal Motor Vehicle Safety Standard No. 218.
>
> Tegol, please also explain the differences, if any, in the failures to comply with Federal Motor Vehicle Safety Standards between the AX-3 Series helmets included in your 2012 recall and the helmets being addressed in this recall campaign.

64. As a direct result of the Defendants' actions, the "Ultra-Low-Profile Outlaw Glossy Rosewood Red Carbon Fiber Motorcycle Half Helmets" failed to adequately protect Plaintiffs, and they suffered severe bodily injury.

65. Defendants Tegol, Inc. and Nanal, Inc. owed a duty to Plaintiffs to manufacture, distribute, and/or sell only items of motor cycle equipment and motor cycle accessories that comply with all applicable Federal Motor Vehicle Safety Standards.

66. Defendants Tegol, Inc. and Nanal, Inc. breached that duty by manufacturing, distributing, and/or selling the Ultra-Low-Profile Outlaw Motorcycle Half Helmets that are not compliant with Federal Motor Vehicle Safety Standard No. 218.

67. Defendants Tegol, Inc. and Nanal, Inc. had a duty to use every reasonable precaution to prevent injury to Plaintiffs, and failed in that duty in one or more of the following ways:

(a) negligently designed the motor cycle helmets and rejected or failed to consider safer alternatives;

(b) negligently marketed, distributed, and sold the motor cycle helmets, resulting in the aforementioned personal injuries to Plaintiffs during routine use;

(c) knew or should have known that through the use of the motor cycle helmets that injury would occur, yet continued to manufacture, sell, promote, market, and distribute the motor cycle helmets;

(d) failed to recall and/or negligently continued to manufacture, sell, promote, market, and distribute the motor cycle helmets despite having actual and implied knowledge that users could not safely use the motor cycle helmets;

(e) failed to warn Plaintiffs and other users of the hazards of the motor cycle helmets;

(f) failed to follow Federal Guidelines pertaining to motor cycle helmet manufacture; and

(g) failed to perform specific tests on the motorcycle helmets.

68. Defendants Tegol, Inc. and Nanal, Inc., through their negligence, were a proximate and legal cause of the aforementioned injuries and property damage that Plaintiffs suffered.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Tegol, Inc. and Nanal, Inc. as follows:

a. Compensatory and consequential damages in excess of $10,000,000;

    b.    Punitive damages in excess one of $10,000,000;

    c.    The costs of this suit; and

    d.    Such other relief which the Court finds just and proper in the circumstances.

### Count VI - Strict Products Liability
### Against Defendants Tegol, Inc. and Nanal, Inc.
### Based on a Design Defect, a Manufacturing Defect, and Distribution
### Of the Ultra-Low-Profile Outlaw Motorcycle Half Helmets

69.    Plaintiffs repeat and re-allege Paragraphs 1 to 37 of this Complaint as Paragraphs 1 to 37 of this Count VI as if restated fully herein.

70.    Plaintiffs repeat and re-allege Paragraphs 60 to 68 of this Complaint as Paragraphs 59 to 67 of this Count VI as if restated fully herein.

71.    At the time the Ultra-Low-Profile Outlaw Motorcycle Half Helmets left the possession of Defendants Tegol, Inc. and Nanal, Inc. and on a continuing basis thereafter, Defendants Tegol, Inc. and Nanal, Inc. had a duty to deliver motorcycle helmets that were reasonably safe, yet breached this duty by delivering Ultra-Low-Profile Outlaw Motorcycle Half Helmets that were unreasonably dangerous.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Tegol, Inc. and Nanal, Inc. as follows:

    a.    Compensatory and consequential damages in excess of $10,000,000;

    b.    Punitive damages in excess one of $10,000.000;

    c.    The costs of this suit; and

    d.    Such other relief which the Court finds just and proper in the circumstances.

## Count VII- Strict Products Liability
## Against Defendants Tegol, Inc. and Nanal, Inc.
## Based on Duty to Cease Manufacture and Distribution of the Defective Motorcycle Helmets

72. Plaintiffs repeat and re-allege Paragraphs 1 to 37 of this Complaint as Paragraphs 1 to 37 of this Count VII as if restated fully herein.

73. Plaintiffs repeat and re-allege Paragraphs 60 to 71 of this Complaint as Paragraphs 60 to 71 of this Count VII as if restated fully herein.

74. With full knowledge of the catastrophic consequences of the repeated failures and of their motorcycle helmets as aforesaid, Defendants Tegol, Inc. and Nanal, Inc. had a duty to cease the manufacturer, distribution, and sale of them, and to recall the distribution and sale of the seriously deficient motorcycle helmets already distributed and sold.

WHEREFORE, Plaintiffs pray this Honorable Court award them damages from Defendants Tegol, Inc. and Nanal, Inc. as follows:

a. Compensatory and consequential damages in excess of $10,000,000;

b. Punitive damages in excess one of $10,000,000;

c. The costs of this suit; and

d. Such other relief which the Court finds just and proper in the circumstances.

## Count VIII-Strict Products Liability
## against Defendants Tegol, Inc. and Nanal, Inc.
## Based on Failure to Warn of the Defective Motorcycle Helmets

75. Plaintiffs repeat and re-allege Paragraphs 1 to 37 of this Complaint as Paragraphs 1 to 37 of this Count VIII as if restated fully herein.

76. Plaintiffs repeat and re-allege Paragraphs 59 to 73 of this Complaint as Paragraphs 59 to 73 of this Count VII as if restated fully herein.

77. Plaintiff's injuries resulted from the unreasonably dangerous condition of the motorcycle helmets.

78. The unreasonably dangerous condition existed at the time the motorcycle helmets left the control of Defendants Tegol, Inc. and Nanal, Inc.

79. Defendants Tegol, Inc. and Nanal, Inc. knew or should have known of the danger due to their noncompliance and failure to follow appropriate testing procedures.

80. Defendants Tegol, Inc. and Nanal, Inc. failed to adequately warn plaintiffs and other consumers of the dangers of the motorcycle helmets.

WHEREFORE, Plaintiffs prays this Honorable Court award them damages from Defendants Tegol, Inc. and Nanal, Inc. as follows:

a. Compensatory and consequential damages in excess of $10,000,000;

b. Punitive damages in excess one of $10,000,000;

c. The costs of this suit; and

d. Such other relief which the Court finds just and proper in the circumstances.

Respectfully Submitted,

s/ John P. DeRose
John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Drive
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com